Gutierrez, Ms. Lowenthal. Good morning. Pleased to court. I'm Cheryl Lowenthal. I represent Daniel Gutierrez. There are three issues, there are two issues raised in the brief and one that was very late filed. Yeah the one that was late filed it seems to me is just really has nothing to do with this case because Dupree involves inchoate offenses under the sentencing guidelines. Your client was not sentenced under the guidelines. Your client received a statutory mandatory minimum sentence. The enhancement was by virtue of 841c providing that if you have a your client had that, Dupree has nothing to do with that. That's what the government said too in its response. Is there something I'm missing? If I may just say that the government filed a notice of 404b that said the prior he had a prior conviction for conspiracy to the that docket entry for the notice of 404b was docket entry number 28. There was a stipulation of facts at the outset of the trial on uh at docket number 58 and that said the defendant was convicted of a serious drug felony in central district of California conspiracy to possess with intent to distribute and finally I would draw your attention to the defendant's I none of what you tell me has anything to do with Dupree, right? But it well but there was an 851 enhancement file. I know but but Dupree isn't about an 851 enhancement. Oh well in that case um the court has it. Dupree's about the guidelines. Very well I just as I was looking through the documents uh on uh on Saturday. Okay. I kept seeing you know the 851 enhancement and I uh and and then I saw you know Dupree about incoherent incoherent offenses and conspiracy and attempt and I just thought that I had better uh raise it. Okay. But if you know if the court that's okay let's get to your other TV understood now the the main issue was the motion to suppress the evidence and the statements made by Mr. Gutierrez when his 18-wheeler truck was stopped on the Florida highway by a trooper. It seemed to be the problem with um the argument that you had made about the the motion to suppress was it it it was it was premised on a misunderstanding of the record. So as I read your brief and you correct me if I'm wrong but as I read your brief you were arguing that the the all the steps for the officer for the traffic stop were completed at 901 but the district court found that that's when it started not when it ended and it seemed to me that the record would allow the district court to have made that finding. It was my understanding from reading the right that he had finished with that warning by 901 and it was not until 912 that the drug dog arrived on the scene to do a. But the district court said it started at 901 that's the problem and if that's if that's the case I don't know what we do with your argument. Well but it I don't know how long it should take to um if he had determined that he was going to write a and I know that the reason that the stop was extended until the drug dog could arrive was because the driver's license was from one state right truck was registered in another right and the trailer with hauling the cars was registered in yet another state and so the um the officers the troopers um reasoning was that he had to check three separate um registrations and licenses and of course everything is computerized now and it really wouldn't really expect that it would take that long for him to get that information right back they have all the computers right in their patrol cars. Well but of course the problem you have is one the trooper testified that he had to manually input the information you just made reference to precisely because the license the the registration the license was in one state not Florida and the tags were in two additional states Maine uh and California and that's why it took him so long but how do you get around the square finding by the district court the district court writes in the order denying the motion to suppress quote Gutierrez suggests that Trooper Llanes intentionally delayed running this information in order to facilitate the sniff but I credit Trooper Llanes' testimony that this was not so and that running the information took longer than normal because of the out-of-state license and registration given that finding don't you have to show that was clear error in order to sustain your argument on suppression well yes your honor but uh it it is the position of the defense that perhaps the judge erred in his finding that would be my best argument to that and if you want to proceed can I have something a little more fundamental it goes to the questions that you've been answered but just backing up a little bit I just want to be clear about the arguments you're making in your brief about the extension so as I understand your brief you make some argument about the stop itself and whether there was reasonable suspicion for the stop and then secondly assuming it was a reasonable suspicion for the stop you make the argument that it was unreasonably extended applying the Rodriguez line of cases and the reason I just sorry I want to summarize and then let me know and the reason as I understand it were twofold for the extension argument one is as the chief judge asked you this this concept that the warning ended at 9-1-1 rather than started in 9-1-1 and secondly that it shouldn't have taken that long in order to plug in the information such that the drug dog was there do I have my fairly incorrect that is correct and if I may address the the reason for the stop to begin with the reason was that a light on the rear of the auto hauling trailer was backwards and obstructed a portion of the license plate well in the in the motion to suppress as an exhibit defense counsel filed a photograph a dash cam photograph from the the trooper's car that showed that indeed it was not the the license tag was not obstructed and if obstructed it was at most a partial part of one digit I mean there are cases where two digits were obstructed by a light then that was a valid reason to stop but here if it was obstructed at all which it's not shown on on the video um then it was a part of one digit and whether that was in the district where this goes to judge marcus's question but didn't the district court credit the officer's testimony that from his point of view when he was viewing it um as both when the truck passed and as he was following the truck um on eastbound on i-10 that from his point of view the dangling light did obstruct one of the numbers in such a way that he was not able to tell what that number was that is that it was the finding yes it was that finding supported by at least the officer's testimony that was credited yes then how are we goes to the same question is how can we find clear error where that's the state of the record if that is indeed the state of the record then you are correct let me ask you a question um one of the facts that you made reference to in this record to support the claim that it took too long to do this was that the officer got out of the patrol car when he was writing up this warning and walked up to the front of truck to look at the dot number and that that was not necessary the district court said that it may not have been necessary but it was part and parcel of the kind of safety inspections that officers generally make and if you look at the leading cases on it wouldn't this be looking at the dot number the transportation number for a truck be consistent with an officer trying to make sure that the protocols of safety were followed probably but it was such it was such an insignificant um basis for this stop and i would submit that uh perhaps that was not all necessary and it was because he um he refused when the officer wanted to look inside the cab of the truck and mr gutierrez said no um that's i i would submit that he i will divert the record into the court's findings and finally if i may say the uh the motion and limiting to exclude the government's expert his testimony was esoteric it was confusing it was not related the issue was whether or not the amount of drugs found in the cab of the truck and the little toolbox behind the seat was uh was a personal use amount or whether it was a the person who might be using it and what his um how acclimated he had become to the drugs and that question was never answered and dr trekkie was not able to answer that and his testimony about the effect of the drugs on an individual would could go to a jury's understanding of what amount would be necessary for personal use versus distribution right yes but there was never they never ascertained the quantity of um of fentanyl in the tablets and so without that information how could anyone how could anyone know okay uh miss lowenthal we're going to hear from miss acosta good morning whenever the costa on behalf of the united states the affiliate may it please court your honors um with regards to the first issue um the motion to suppress um as we've heard there was reasonable suspicion for the stop the tag was obstructed um the court the district court did credit the credibility of tribune as to whether or not he um as to the duration of the stop and why it took so long um i think that he properly explained that there were three states involved um the driver's license of the driver was out of arizona um the truck's tag was um from california and then the trailer tag was out of maine and maine had a complicated classification system so there was reasonable suspicion then um as part of the analysis the next question is whether or and um it's the government's position and the record shows that um there was no unlawful extension the tasks performed were tied to the mission of the stomp and therefore um there was any delay was connected to how long it was taken the officer to process the warning yeah i read the good chair's brief to to be based to be premised on a misunderstanding of the record and that is what happened at 901 was that the completion of of of the officer's task or the start of it that was the start that was found that it was the start seemed to me the record supports that that kind of takes care of that argument what about the um the drug expert yes your honor um on issue number two this was clearly a weight case it wasn't a run-of-the-meal case where you have a number of drug paraphernalia such as scales and baggies so it was important for the jury to hear about the dosages as well as the effect on the human body um that was a relevant issue and the testimony provided by dr trekkie um was not um was not um the probative value of that testimony was not substantially outweighed by any unfair prejudice i understood it he testified about what specific quantities would do in terms of effect on a human right yes yes your honor that is correct and the district court conducted a deliberate hearing and considered the factors of frazier the district court considered the competency of dr trekkie and the record indicates he was clearly competent um his methodology was uh based on science it was tested um through the dea talks program as well as by toxicologists as well as information was helpful to the jury in deciding whether or not there was a distribution quantity any other questions um i don't have any ms i don't think anyone on the phone also on the panel does either so unless you have something you want to tell us um no your honor thank you thank you um you have four minutes i may not need i may not need four minutes but um as to the methamphetamine mr gutierrez was a long time drug user he had been in rehab and when he was in rehab he really enjoyed being able to be in control of his his self in his mind he liked it but once he got out he went back to using drugs so he would probably have a higher tolerance to a certain quantity of methamphetamine and or fentanyl there's no doubt that that's a factor that could be considered by the jury in rebutting the expert testimony but how does that go to the ultimate gatekeeping function of the admissibility of that testimony in other words is it not at least relevant to a jury that somebody that the general person the general human being has a toxicity limit and a and a limit of where they will die if they take this amount and the defendant had in his possession far in excess of what that toxicity level would be well i'm not sure that that that actually that the amount of fentanyl was well you just switched it on me there let's talk about the methamphetamine first so well the meth yes i um there was methamphetamine there was a pipe not not any other drug paraphernalia but a glass pipe was found with the methamphetamine and um i just dr trekkie's testimony was confusing complex he was he was a very qualified and he was a dea pharmacologist he was very qualified but his testimony was just too esoteric for the jury to really comprehend that would be my argument and i thank the court thank you miss haunt all um you were court appointed and uh we want to thank you for accepting that appointment